[No. 18405–9–I.   Division One.   December 14, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. JIMMY LEE PITTMAN, *Appellant.*

*Mark W. Muenster* and *Rita Griffith* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Ellen O'Neil–Stephens* and *Michael Schwartz, Deputies,* for respondent.

WILLIAMS, J.—Jimmy Lee Pittman was charged by amended information with robbing four persons and a store while armed with a handgun. He was found guilty on all counts and appeals. The State cross–appeals.

The facts are that on September 27, 1985, a robbery took place in a beauty shop in Seattle, with money from the cash register and money, credit cards and checkbooks from the owner of the shop and three customers being taken. About 10 minutes later, a policeman on patrol in the area received a report of the robbery by two men and noted a car containing two men somewhat of the same description drive by. Because the driver looked at the officer "out of the cor-

ner of his eye" the officer followed and subsequently stopped the vehicle when it reached the limit of his search area. The car was occupied by Pittman and James Washington. A more detailed report of the robbery was then received, on the basis of which the officer arrested the two. Pittman convinced the officer that he was innocent and that Robert Toms, who had been let out of the car at another person's house, was one of the robbers. The officer then went to that house, arrested Toms and released Pittman.

Later that day, a detective interviewed Washington and Toms, who both said Pittman was one of the robbers. Based on this information, the detective put Pittman's photograph in a photo montage which was shown to one of the victims, Myrtle McNab, 3 days later. She identified Pittman as one of the robbers. A fingerprint taken from the cash register at the beauty shop was compared to that of Pittman, already on file with the police, and determined to be the same.

The trial court ruled that the initial stop of the car was unlawful, and the State concedes this.

Pittman's principal contention is that the evidence of McNab's identification of him in the photo montage and his fingerprint on the cash register should have been suppressed because both flowed directly from the illegal stop of him and Washington while in the car. The Fourth Amendment requires exclusion of the direct and indirect products of illegal police conduct. *Wong Sun v. United States,* 371 U.S. 471, 484, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963). Article 1, section 7 of the state constitution likewise prohibits admission of evidence derived from an illegal search or seizure. *State v. O'Bremski,* 70 Wn.2d 425, 428, 423 P.2d 530 (1967). When considering the admission of evidence obtained indirectly from a constitutional violation, the question is whether, granting establishment of the primary illegality, the evidence came by exploitation of that illegality or, instead, by means sufficiently distinguishable to be purged of the primary taint. *Wong Sun,* at 488. The burden

is on the State to demonstrate a sufficient attenuation from the illegal conduct to dissipate its taint. *State v. Childress,* 35 Wn. App. 314, 316, 666 P.2d 941, *review denied,* 100 Wn.2d 1031 (1983).

■ Although Pittman was riding in a car which was illegally stopped, the information leading to the inclusion of him in the photo montage and the matching of his fingerprint with the one on the cash register was the result of the simultaneous stop and investigation of Washington. It was he who gave the police the information that Pittman was one of the robbers. The montage and fingerprint comparison followed from that information. Pittman cannot successfully object to evidence obtained directly or indirectly from an illegal stop of Washington. *State v. Smith,* 104 Wn.2d 497, 509, 707 P.2d 1306 (1985).

Pittman also contends that he was placed in double jeopardy by being convicted of robbery of the beauty shop and, in another count, store owner Vanderford. The State concedes this; the judgment as to count 1 must be vacated.

■ The State's cross appeal is directed at the trial court's determination that the robberies encompassed the same criminal conduct for the purpose of sentencing pursuant to RCW 9.94A.400(1)(a) (Laws of 1984, ch. 209, § 25). The following from *State v. Dunaway,* 109 Wn.2d 207, 215, 743 P.2d 1237 (1987) applies:

> Convictions of crimes involving multiple victims must be treated separately. To hold otherwise would ignore two of the purposes expressed in the SRA: ensuring that punishment is proportionate to the seriousness of the offense, and protecting the public. RCW 9.94A.010(1), (4). As one commentator has noted, "to victimize more than one person clearly constitutes more serious conduct" and, therefore, such crimes should be treated separately. D. Boerner, *Sentencing in Washington* § 5.8(a), at 5–18 (1985). Additionally, treating such crimes separately, thereby lengthening the term of incarceration, will better protect the public by increasing the deterrence of the commission of these crimes. For these reasons, we conclude that crimes involving multiple victims must be treated separately.

The judgment of guilt as to count 1 is vacated, the judgment of guilt as to the other four counts is affirmed. The cause is remanded for resentencing with the sentence range for each offense to be determined by using the other offenses as criminal history.

GROSSE and WEBSTER, JJ., concur.

Review denied by Supreme Court March 8, 1988.