[No. 56334-9. En Banc. April 18, 1991.]

THE STATE OF WASHINGTON, *Respondent,* v. ALFONSO BATISTA, *Petitioner.*

Alfonso Batista, pro se, *Eric J. Nielsen* of *Washington Appellate Defender Association,* and *Walter E. Curnutt,* for petitioner.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *John C. Monter, Deputy,* for respondent.

*Mark W. Muenster* on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae for petitioner.

*Norm Maleng, Prosecuting Attorney for King County,* and *Donna L. Wise, Senior Appellate Attorney,* amicus curiae for respondent.

BRACHTENBACH, J.—Alfonso Batista was convicted of first degree murder and first degree assault. Batista maintains that the trial court erred in imposing an exceptional sentence, consisting of consecutive sentences for the crimes. The trial court justified the consecutive sentences by relying upon RCW 9.94A.390(2)(f),[1] which allows for an exceptional sentence where a presumptive sentence would be clearly too lenient in light of the purposes of the Sentencing Reform Act of 1981 (SRA). In doing so, however, the trial

---

[1]Throughout this opinion, the relevant statutes will be referred to in the present tense as they were codified at the time of defendant's offense and sentencing. Where provisions have been recodified since that time, the changes will be noted in the margin.

Former RCW 9.94A.390(2)(f) is now codified at RCW 9.94A.390(2)(g). *See* Laws of 1990, ch. 3, § 603.

court misconstrued the nature and effect of RCW 9.94A-.390(2)(f).

The trial court seemed to believe that consecutive sentencing was justified by relying on this factor despite the fact that the trial court stated that an exceptional sentence in the form of concurrent sentences was not justified. The trial court seemed to regard the "clearly too lenient" factor as a device for imposing consecutive sentences, rather than treating it as an aggravating factor like others set out in RCW 9.94A.390(2).

Because of this manner of applying RCW 9.94A.390(2)(f), the trial court's imposition of an exceptional sentence is affected by legal error aside from other issues raised by defendant at this stage of review. We note that the same error made by the trial court in this case is reflected in the trial court's findings and conclusions set out in *State v. Vandervlugt*, 56 Wn. App. 517, 521, 784 P.2d 546 (1990). We take this opportunity to resolve this confusion, particularly because it is necessary for full disposition of the case before us. *See* RAP 1.2(a); RAP 12.2. We explain the applicable legal standards and remand for resentencing in light of our analysis herein.

On November 3, 1987, about 4 p.m., a brown or dark maroon El Camino pulled into an alley in downtown Yakima and stopped. Batista was the driver of the car. The passenger, Carlos Garcia Hernandez, got out of the car with a semi–automatic rifle, in the nature of an AK 47 assault rifle, and fired a number of times into a group of men playing dice in the backyard of an apartment building. One man was shot and killed. Another man was shot in the leg; the bullet shattered his ankle. Bullets sprayed the area, one striking a ceiling fan and light in a nearby house and another striking a truck.

Hernandez got back into the El Camino and the car sped north in the alley and then onto a nearby street. Batista and Hernandez were apprehended shortly thereafter.

Following trial and return of the jury verdict of guilty on the murder and assault charges, the trial court entered the following findings of fact:

Both the victims herein, on the afternoon of November 3, 1987, were in the back/side yard of an apartment building in the City of Yakima, playing a dice game with several other persons. None of these individuals, including the victims, had had any prior dealings of any kind with either defendant, and had no reason to suspect that what would shortly happen would happen. Both victims herein were totally exposed, and unsuspecting of anything as they innocently played dice.

Finding of fact 3.

As testified to by witnesses herein at trial, defendant Batista as the driver and defendant Hernandez as the passenger had driven by the subject apartment building on several occasions prior to the shooting including driving northbound in the alley immediately behind the apartment in the same direction as when the shooting occurred on the afternoon of November 3. This activity took place on more than one occasion, during the hours of darkness as well as shortly before the shooting and was participated in by both defendants. It is obvious that from this activity the defendants were trying to learn when, where people would be in and around the residence, its yard, the layout of the building, yard, etc., as well as the ingress and escape routes.

Finding of fact 4.

The type of weapon used by defendants, an AK 47 Assault Rifle, while it can be purchased by members of the public, it is not a commonly found or used firearm. It, as well as its ammunition, obviously had to be obtained especially for its intended use on November 3.

Finding of fact 5.

The actual shooting as well as materials noted in Sections IV and V, above, clearly show that this was a very deliberate execution.

Finding of fact 6.

The trial court entered the following conclusions of law:

The defendants engaged in a very deliberate and sophisticated murder and assault far exceeding the normal planning for same and thereby exhibited the degree of sophistication contemplated by RCW 9.94A.390(2f) [sic].

Conclusion of law 3.

Given the foregoing Findings of Fact the court also concludes that the victims herein were particularly vulnerable as that term is used in the sentencing reform act.

Conclusion of law 4.

Considering the purposes of the sentencing reform act as expressed in RCW 9.94A.010(1) (4) the multiple offense policy of RCW 9.94A.400 results in sentences for these defendants which are clearly too lenient.

Conclusion of law 5.

In oral remarks the trial court discussed the degree of sophistication involved in carrying out the crimes and vulnerability of the victims, and then said that these factors did not justify going beyond the standard range, "in other words, the upper part of the standard range . . .." Verbatim Report of Proceedings, at 760. The court did feel, though, that the aggravating circumstances were sufficient to allow consecutive sentencing, as opposed to concurrent sentencing. In response to a question from the prosecutor, the court said that the aggravating factors it found resulted in a presumptive sentence which would be clearly too lenient in light of the purposes of the Sentencing Reform Act of 1981, and this was why the court imposed consecutive terms.

The trial court sentenced Batista to consecutive terms of 388 months for the murder, and 133 months for the assault. Given Batista's offender score, the standard range sentences for the offenses are 291 to 388 months for the murder, and 100 to 133 months for the assault; thus, the consecutive terms were each set at the high end of Batista's standard range.

Batista appealed, arguing that the trial court erred in imposing an exceptional sentence. The Court of Appeals upheld the trial court's findings that the degree of sophistication and the vulnerability of the victims justified an exceptional sentence, and then, applying an abuse standard of review, held that the trial court did not err in finding that the multiple offense policy of the Sentencing Reform Act of 1981 (SRA) resulted in a sentence that was clearly too lenient. *State v. Hernandez*, 54 Wn. App. 323, 328, 773

P.2d 857 (1989), *review granted sub nom. State v. Batista,* 113 Wn.2d 1035 (1990). The Court of Appeals upheld Batista's sentence.

We granted review. In addition to other issues raised by Batista, the parties were directed to address the trial court's reliance on the "clearly too lenient" factor and the Court of Appeals' analysis of that issue in light of *State v. Fisher,* 108 Wn.2d 419, 739 P.2d 683 (1987), *State v. Pittman,* 54 Wn. App. 58, 772 P.2d 516 (1989), and *State v. Tunell,* 51 Wn. App. 274, 753 P.2d 543, *review denied,* 110 Wn.2d 1036 (1988).

We begin with the statutory framework for exceptional sentencing. Where multiple offenses are involved, RCW 9.94A.400(1) and (2) provide for presumptive sentences which are either concurrent or consecutive, depending upon the particular circumstances. For example, RCW 9.94A.400(1)(b) provides that where a person is convicted of three or more serious violent offenses arising from separate and distinct criminal activity, the sentences shall be served consecutively.[2] Most multiple current offenses must be served concurrently, however. RCW 9.94A.400(1)(a). The multiplicity of the offenses is accounted for because, when a trial court sentences a person for two or more current offenses, each counts as criminal history with respect to the other thus increasing the offender score for purposes of calculating the standard range sentences for the offenses. RCW 9.94A.400(1)(a).

, Exceptional sentences outside the standard range may be imposed under proper circumstances. Under RCW 9.94A.120(13),[3] a "departure from the standards in RCW 9.94A.400(1) and (2) governing whether sentences are to be served consecutively or concurrently is an exceptional sentence . . .." In order to impose an exceptional sentence, one

---

[2]RCW 9.94A.400(1)(b) now refers to two rather than three multiple violent felonies. Laws of 1990, ch. 3, § 704.

[3]Former RCW 9.94A.120(13) is now codified at RCW 9.94A.120(14). *See* Laws of 1988, ch. 154, § 2.

outside the standard range, the trial court must find, considering the purposes of RCW 9.94A, "that there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.120(2).

RCW 9.94A.390 sets out "illustrative factors which the court may consider in the exercise of its discretion to impose an exceptional sentence." The list in RCW 9.94A-.390 is illustrative only, and is not an exclusive or exhaustive collection of all possible "substantial and compelling reasons" which may support an exceptional sentence. RCW 9.94A.390; *State v. McAlpin,* 108 Wn.2d 458, 463, 740 P.2d 824 (1987). The listed factors include both mitigating factors, which might support a lesser sentence than a standard range sentence, RCW 9.94A.390(1)(a)–(g), and aggravating factors, which might support a greater sentence than a standard range sentence, RCW 9.94A.390(2)(a)–(f).[4] Where a single offense is involved, if relevant factors support a greater sentence than a standard range sentence, a longer sentence for the offense may be imposed.

Where multiple current offenses are concerned, in addition to lengthening of sentences, an exceptional sentence may also consist of imposition of consecutive sentences where concurrent sentencing is otherwise the standard. RCW 9.94A.400(1)(a) provides that "[c]onsecutive sentences may only be imposed under the exceptional sentence provisions of RCW 9.94A.120 and 9.94A.390(2)(e) or any other provision of RCW 9.94A.390."[5]

RCW 9.94A.390(2)(f) provides that an exceptional sentence may be supported where "[t]he operation of the multiple offense policy of RCW 9.94A.400 results in a presumptive sentence that is clearly too lenient in light of

---

[4]Illustrative mitigating factors are now set out in RCW 9.94A.390(1)(a)–(h), *see* Laws of 1989, ch. 408, § 1, and illustrative aggravating factors are now set out in RCW 9.94A.390(2)(a)–(g), *see* Laws of 1990, ch. 3, § 603.

[5]Former RCW 9.94A.390(2)(e) is now codified at RCW 9.94A.390(2)(f). *See* Laws of 1990, ch. 3, § 704.

the purpose of this chapter, as expressed in RCW 9.94A-.010."[6] As explained, the trial court below relied upon this factor, along with two others, in deciding that consecutive sentences should be imposed as an exceptional sentence.

The trial court first considered the two other factors, the vulnerability of the victims and the degree of sophistication in carrying out the crime, and concluded that these factors alone did not support going beyond the standard range. The trial court evidently thought, however, that it could nevertheless impose consecutive sentences. It did so by also relying on RCW 9.94A.390(2)(f). The trial court appears to have thought it necessary to rely upon RCW 9.94A-.390(2)(f) in order to impose consecutive sentences as an exceptional sentence.

However, RCW 9.94A.400(1), quoted above in relevant part, expressly and unequivocally states that *any* of the aggravating factors found in RCW 9.94A.390(2) may be relied upon by a trial court to support an exceptional sentence in the form of consecutive sentences. The statute explicitly allows a court to impose consecutive sentences in the complete absence of any reliance on RCW 9.94A-.390(2)(f).

■ Nothing in the "clearly too lenient" factor, RCW 9.94A.390(2)(f), indicates that this aggravating factor is to be treated any differently than the other listed aggravating factors, and nothing indicates that this factor is only relevant to consecutive sentencing. If a presumptive sentence is

---

[6]RCW 9.94A.010 provides:

"The purpose of this chapter is to make the criminal justice system accountable to the public by developing a system for the sentencing of felony offenders which structures, but does not eliminate, discretionary decisions affecting sentences, and to add a new chapter to Title 9 RCW designed to:

"(1) Ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history;

"(2) Promote respect for the law by providing punishment which is just;

"(3) Be commensurate with the punishment imposed on others committing similar offenses;

"(4) Protect the public;

"(5) Offer the offender an opportunity to improve him or herself; and

"(6) Make frugal use of the state's resources."

clearly too lenient, this problem could be remedied *either* by lengthening concurrent sentences, *or* by imposing consecutive sentences.

Our cases are in accord. In *State v. Fisher, supra,* we implicitly recognized that the "clearly too lenient" factor of RCW 9.94A.390(2)(f) may be relied upon, in proper factual circumstances, to support exceptional sentencing in the form of lengthened concurrent sentences. In *Fisher,* the trial court relied upon this aggravating factor as supporting exceptional concurrent sentences. We concluded that the factor did not support an exceptional sentence, but did so on the ground that the record did not support reliance on the factor. We did *not* hold that the factor could not be relied upon because it only applies to support consecutive sentencing.

More recently, we upheld an exceptional sentence in the form of lengthened concurrent sentences based upon the "clearly too lenient" aggravating factor set out in RCW 9.94A.390(2)(f). *State v. Stephens,* 116 Wn.2d 238, 803 P.2d 319 (1991). We have also upheld consecutive sentencing as an exceptional sentence based upon this aggravating factor. *State v. Oxborrow,* 106 Wn.2d 525, 723 P.2d 1123 (1986).[7]

It is important to remember what is meant by the "multiple offense policy" of RCW 9.94A.400: The statute sets out a precise, detailed scheme to follow where multiple offenses are involved. Where multiple current offenses are concerned, except in specified instances involving multiple violent felonies, presumptive sentences for multiple current

---

[7]At the time relevant in *State v. Oxborrow,* 106 Wn.2d 525, 723 P.2d 1123 (1986), RCW 9.94A.400 did not expressly allow for consecutive sentences as an exceptional sentence. *State v. Oxborrow, supra; see* Laws of 1986, ch. 257, § 28 (language expressly allowing for consecutive exceptional sentencing added to RCW 9.94A.400), § 38 (effective date July 1, 1986). In *Oxborrow,* at 534, after quoting the "clearly too lenient" aggravating factor, the court said "[t]he Legislature thus recognized that the limitations on consecutive sentences in RCW 9.94A-.400 might be inappropriate in exceptional cases." The court thus concluded that reliance on the "clearly too lenient" factor to support consecutive exceptional sentencing was proper.

offenses consist of concurrent sentences, each computed with the others treated as criminal history utilized in calculating the offender score. Where such a presumptive sentence is "clearly too lenient," it is clearly possible under the statutory scheme to depart from the presumptive sentence by either imposing consecutive sentences or by further lengthening the otherwise standard concurrent sentences which have already been calculated according to the multiple offense policy of RCW 9.94A.400.

In summary to this point, standard sentencing for multiple current offenses under RCW 9.94A.400(1) and (2) includes both concurrent and consecutive sentencing, depending on the offenses. Where a greater sentence is supported by aggravating factors like those set out in RCW 9.94A.390(2), an exceptional sentence for multiple current offenses may consist of either a lengthening of sentences or an imposition of consecutive sentences in instances where concurrent sentences are standard. RCW 9.94A.390(2)(f) may be relied upon by a trial court to impose either concurrent or consecutive exceptional sentencing. Any of the other aggravating factors listed in RCW 9.94A.390(2), or other aggravating factors like them, may likewise support either concurrent or consecutive exceptional sentencing.

 Having addressed RCW 9.94A.390(2)(f) in terms of the ways in which an exceptional sentence might be structured, we now turn to the matter of what must be established in order for a trial court to rely upon this aggravating factor to go outside the standard range. As this court explained in *State v. Fisher*, 108 Wn.2d 419, 428, 739 P.2d 683 (1987):

> It is proper to rely on this aggravating factor when there is some extraordinarily serious harm or culpability resulting from multiple offenses which would not otherwise be accounted for in determining the presumptive sentencing range.

The court has thus identified two factual bases, either of which may support reliance on RCW 9.94A.390(2)(f): (1) "egregious effects" of defendant's multiple offenses and (2)

the level of defendant's culpability resulting from the multiple offenses. Each of these factual bases must be beyond what is accounted for in presumptive sentencing, in accord with the requirement that any factor used in calculating the presumptive range may not be relied upon as an aggravating factor. *See State v. Nordby,* 106 Wn.2d 514, 518, 723 P.2d 1117 (1986); *State v. McAlpin,* 108 Wn.2d 458, 463, 740 P.2d 824 (1987); *State v. Pittman,* 54 Wn. App. 58, 61, 772 P.2d 516 (1989).

In *State v. Tunell,* 51 Wn. App. 274, 281 n.5, 753 P.2d 543, *review denied,* 110 Wn.2d 1036 (1988) and in *Pittman,* at 63, the courts recited the *Fisher* standard, and then determined in each case that there was no indication that the "multiplicity of the offenses" had any "egregious effects." To the extent these statements suggest that extraordinarily serious harm unaccounted for in presumptive sentencing is the only way to satisfy the *Fisher* standard, they are incorrect. Either extraordinarily serious harm or culpability may support reliance on RCW 9.94A-.390(2)(f).

Recently, we found the *Fisher* standard was satisfied where a defendant who committed eight burglaries would presumptively receive the same sentence as if he had committed two burglaries. *State v. Stephens, supra.*

With these principles in mind, we turn to the trial court's findings and conclusions in this case.

The trial court relied upon the "clearly too lenient" aggravating factor set out in RCW 9.94A.390(2)(f), but did not enter any factual findings supporting its conclusion of law that presumptive sentences were clearly too lenient in light of the purpose of the SRA. Under RCW 9.94A.120(3), whenever an exceptional sentence is imposed, the trial court "shall set forth the reasons for its decision in written findings of fact and conclusions of law." A conclusory statement that the presumptive sentence is clearly too lenient is

insufficient to support an exceptional sentence; at most it can be said that the conclusion, without supporting factual basis, evidences the trial court's dissatisfaction with the sentencing structure of the SRA. This is an inadequate basis to depart from the standard range. *See State v. Pascal,* 108 Wn.2d 125, 137–38, 736 P.2d 1065 (1987).

Therefore, to support the conclusion of law that the multiple offense policy set out in RCW 9.94A.400 results in a presumptive sentence that is clearly too lenient in light of the purpose of the SRA, the trial court must set forth written factual findings which in fact support the conclusion. The findings must identify the factual circumstances described in *Fisher* (*i.e.,* the factual basis establishing the harm or culpability resulting from the offense which is beyond that accounted for in presumptive sentencing). RCW 9.94A.120(3) requires such written findings; written findings ensure that a trial court properly bases its conclusions on the facts and not simply on a belief that the standard range sentence is inadequate; and such findings help ensure meaningful review by the appellate court. In the absence of such findings, an appellate court should not uphold a trial court's reliance on an aggravating factor said to support an exceptional sentence.

The trial court's failure to enter findings in accord with *Fisher* appears related to its misapprehension of what RCW 9.94A.390(2)(f) is all about. Because of the trial court's error as to the legal meaning and function of this provision, we remand for resentencing in accord with our analysis in this opinion. Upon remand, if the trial court again relies upon RCW 9.94A.390(2)(f), its factual findings must identify, in accord with *Fisher,* what factual basis supports the reason in .390(2)(f). However, while we do not decide the matter, we question whether the *Fisher* standard is satisfied in this case.

In addition to the factor set out in RCW 9.94A.390(2)(f), the trial court concluded that the victims were particularly

vulnerable,[8] and that the crime involved a high level of sophistication.[9]

Significantly, the trial court was of the mind that exceptional concurrent sentences were not justified, but the court nevertheless imposed consecutive sentences which constituted an exceptional sentence. This approach raises the issue: Can aggravating factors which do not support lengthened concurrent sentences as an exceptional sentence support consecutive sentencing as an exceptional sentence? In this case, can findings of extreme vulnerability of the victims and a high level of sophistication in carrying out the crime support consecutive sentences where the trial court determined that they do not justify lengthened concurrent sentences?

---

[8]The Court of Appeals upheld the trial court's reliance on the vulnerability of the victims at least in part on the basis that because the victims were within the curtilage of their residence, they were in a zone of privacy which rendered them particularly vulnerable. *State v. Hernandez,* 54 Wn. App. 323, 326–27, 773 P.2d 857 (1989), *review granted sub nom. State v. Batista,* 113 Wn.2d 1035 (1990). The Court of Appeals suggested, however, that vulnerability alone would not justify an exceptional sentence, but, in combination with either of the other factors relied upon by the trial court, it did support an exceptional sentence. *Hernandez,* at 327–28.

The trial court, however, expressly rejected the notion that the victims were in a zone of privacy. Verbatim Report of Proceedings, at 755 ("I don't think we can really categorize the open yard as a zone of privacy. I recognize it is part of the curtilage . . ."). Photographs of the area confirm the trial court's view that the area is open. It is easily accessible from several directions. Exhibits 14, 32. Testimony from several witnesses established that the concrete slab where the dice game was held, near the alley, was the site of almost daily dice games involving many people.

We do not decide here whether a zone of privacy finding in another case might justify an exceptional sentence. Whatever the merits of such a determination, we agree with the trial court that the open back/side yard of the apartment building did not constitute a zone of privacy.

[9]Some of the trial court's oral remarks suggest that the court may have considered good time credits in deciding whether to impose an exceptional sentence, Verbatim Report of Proceedings, at 759–60, but the court did not enter any findings or conclusions to this effect. Possible earned early release is not a proper factor on which to base an exceptional sentence. *State v. Fisher,* 108 Wn.2d 419, 429, 739 P.2d 683 (1987).

■ There is no basis in the statutes to uphold the trial court on this point. No distinction is made in the statutes which suggests that any particular factor does or does not apply depending solely upon the *type* of exceptional sentence which the trial court chooses to impose. If a given factor is a proper aggravating factor supporting an exceptional sentence, it will support either lengthened or consecutive exceptional sentencing. Conversely, if an aggravating factor does not support an exceptional sentence in the form of lengthened concurrent sentences, it will not support an exceptional sentence in the form of consecutive sentencing.

Because we are remanding for resentencing to allow the trial court to reconsider its reliance on RCW 9.94A-.390(2)(f), we leave it to the trial court to reconsider its reliance on the other two factors it found. We share the trial court's doubts about whether each of those two factors supports an exceptional sentence. In regard to the vulnerability factor, we note that in his pro se petition Batista claims that the trial court's finding that the victims were unsuspecting is unsupported by the record. There is some merit to this claim, because the record does not support the trial court's statement that none of the men playing dice, including the victims, had had any prior dealings with either defendant. Instead, the record is silent on the question whether most of the men, including the victims, had any relationship or dealings with the defendants.

Moreover, even had the victims been in another place (other than the apartment yard) and had some advance notice of the attack, it is unclear how they would have been any less vulnerable to an attack by someone using a semi-automatic assault rifle than they were in the apartment yard.

The trial court should thus first decide whether, and which, aggravating factors support an exceptional sentence. If an exceptional sentence is supported, the trial court should then decide whether to impose exceptional concurrent sentences or consecutive sentences as an exceptional sentence.

Next, we address the Court of Appeals' application of an abuse of discretion standard of review.

██ If the trial court relies upon a particular reason as supporting an exceptional sentence, it must support its conclusion by entering findings of fact. In reviewing an exceptional sentence, therefore, the appellate court must determine that the court has entered the proper written findings and conclusions, RCW 9.94A.120(3). Then, the appellate court must review the exceptional sentence according to RCW 9.94A.210(4), which provides:

> To reverse a sentence which is outside the sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing judge are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.

Appellate review of whether the reasons are supported by evidence in the record is under the "clearly erroneous" standard, and whether those factors justify a departure from the standard range is reviewed under the "matter of law" standard of review. *State v. Nordby,* 106 Wn.2d 514, 517–18, 723 P.2d 1117 (1986); *State v. Dunaway,* 109 Wn.2d 207, 218, 743 P.2d 1237, 749 P.2d 160 (1987). The review under the last provision, RCW 9.94A.210(4)(b), is under an abuse of discretion standard. *State v. Oxborrow,* 106 Wn.2d 525, 723 P.2d 1123 (1986); *Dunaway,* at 218; *State v. Pryor,* 115 Wn.2d 445, 450, 799 P.2d 244 (1990).

Here, the Court of Appeals, Division Three, noted the court's reliance on the aggravating factor set out in RCW 9.94A.390(2)(f) (although erroneously referring to the multiple offense policy of .390(2)(f) rather than .400). *State v. Hernandez,* 54 Wn. App. 323, 328, 773 P.2d 857 (1989), *review granted sub nom. State v. Batista,* 113 Wn.2d 1035 (1990). Then, instead of engaging in proper appellate review of that factor under RCW 9.94A.210(4)(a), the court abruptly turned to the argument that the sentence was clearly too excessive, *see* RCW 9.94A.210(4)(b), and applied the abuse of discretion standard of review. *Hernandez,* at

328. The court's opinion thus gives the impression that the "clearly too lenient" factor is addressed by looking solely at abuse of discretion and asking whether the sentence imposed was one which no reasonable person would impose. The Court of Appeals appears to have confused the aggravating factor set out in RCW 9.94A.390(2)(f), which, if properly found, acts to support an exceptional sentence, with the standard for reviewing the length of an exceptional sentence once an exceptional sentence is justified, *see* RCW 9.94A.210(4)(b). Stated a little differently, the Court of Appeals simply addressed the propriety of the length of the exceptional sentence under the abuse of discretion standard without ever addressing the initial question of the propriety of the trial court's reliance on the aggravating factor set out in RCW 9.94A.390(2)(f).

The Court of Appeals' opinion leaves two erroneous impressions: first, by failing to discuss this case in terms of the analysis in *State v. Fisher,* 108 Wn.2d 419, 739 P.2d 683 (1987) the court suggests that RCW 9.94A.390(2)(f) requires something other than what this court said in *Fisher.* Second, it gives the erroneous impression that reviewing a trial court's reliance on this aggravating factor is under an abuse of discretion standard without regard to the specific review criteria which apply. Neither of these impressions is correct.

Finally, in *State v. Estrella,* 115 Wn.2d 350, 798 P.2d 289 (1990) we remanded for resentencing within the standard range, after concluding that the findings of fact used to justify an exceptional sentence were not sufficiently substantial or compelling to support an exceptional sentence. Our decision herein is not to be read as altering the principle that remand for a presumptive sentence is required where all of the reasons said to support the exceptional sentence are held insufficient by an appellate court.

This case is unlike *Estrella* because we do not decide whether the aggravating factors relied upon by the trial court support an exceptional sentence (although some doubts are expressed above). Instead, having determined

that the trial court misconstrued and misapplied the law, aside from the question of the sufficiency of the reasons given for an exceptional sentence, we reverse and remand for resentencing in accord with the legal principles stated herein.

DORE, C.J., UTTER, DOLLIVER, ANDERSEN, DURHAM, SMITH, and GUY, JJ., and CALLOW, J. Pro Tem., concur.