IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31020-5-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JASON ALLEN GRAHAM, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

BROWN, J. — In 2006, this court affirmed Jason A. Graham's attempted first degree murder, first degree assault, second degree assault, and first degree possession of stolen property convictions. *See State v. Jones*, noted at 136 Wn. App. 1009, 2006 WL 3479055 at *12 (*Graham I*). Mr. Graham's sentence was partly based on several firearm enhancements even though the jury found deadly weapon enhancements. *Id.* Our Supreme Court accepted review solely regarding the imposition of the firearm enhancements. *State v. Graham*, 169 Wn.2d 1005, 234 P.3d 210 (2010) (*Graham II*). The Supreme Court remanded the matter to this court for reconsideration in light of a later decided case, *State v. Williams-Walker*, 167 Wn.2d 889, 225 P.3d 913 (2010). Under *Williams-Walker*, a sentencing court must impose a deadly weapon

enhancement when the jury finds the defendant was armed with a deadly weapon even if the weapon was a firearm.

This court then remanded the matter to the trial court for resentencing consistent with *Williams-Walker. State v. Graham*, noted at 163 Wn. App. 1011, 2011 WL 3570120 at *3 (*Graham* III). At resentencing the court corrected and reduced Mr. Graham's standard-range sentence from a total of 1,225.5 months to a total of 985.5 months after considering and reluctantly rejecting his multiple offense policy arguments under RCW 9.94A.589. Mr. Graham appealed his standard-range sentence, contending the court erred in denying his request for a mitigated exceptional sentence because it failed to apply multiple offense policy principles of RCW 9.94A.589(1)(a) to RCW 9.94A.589(1)(b).

We conclude the trial court correctly reasoned the multiple offense policy applies to RCW 9.94A.589(1)(a), but not to serious violent offenses sentenced under RCW 9.94A.589(1)(b). Additionally, in imposing Mr. Graham's standard-range sentence under RCW 9.94A.589(1)(b), the trial court properly exercised its discretion in rejecting his multiple offense arguments when reasoning the differences in his criminal behaviors were not nonexistent, trivial, or trifling. Accordingly, we affirm.

## FACTS

In January 2002, a police officer stopped Mr. Graham in downtown Spokane for speeding. *Graham* III, at *1. Gunfire erupted, and Mr. Graham's car sped away. Eventually the car crashed, and Mr. Graham

2

engaged in a gun battle with several officers. He was shot and arrested.

The State charged Mr. Graham with six counts of attempted first degree murder, one count of first degree assault, one count of unlawful possession of a firearm, one count of first degree possession of stolen property, and one count of taking a motor vehicle without permission. The trial court instructed the jury on the procedure for deciding the special verdicts regarding deadly weapon enhancements. *Graham* III, 2011 WL 3570120 at *1. The jury found Mr. Graham guilty of two counts of attempted first degree murder, four counts of first degree assault, one count of second degree assault, one count of unlawful possession of a firearm, one count of possession of stolen property, and one count of taking a motor vehicle without permission. The jury also found by special verdicts that Mr. Graham was armed with a deadly weapon in the commission of the attempted murder and assault offenses. Despite the jury's findings that Mr. Graham was armed with a deadly weapon, the trial court imposed seven consecutive firearm enhancements, resulting in a sentence of 1,225.5 months. Of that sentence, 33 years consisted of mandatory consecutive firearm enhancements. *Graham* III, 2011 WL 3570120 at *2.

On appeal, this court affirmed Mr. Graham's convictions and sentence. *Graham* I, 2006 WL 3479055 at *1. Mr. Graham filed a petition for review with the Washington Supreme Court, which granted the petition solely on the enhancement issue and remanded for this court's reconsideration. *Graham* II, 169 Wn.2d 1005. Thereafter, this

3

court remanded "for resentencing consistent with the decision in *Williams-Walker*." *Graham* III, 2011 WL 3570120 at *3.

At the 2012 resentencing hearing, Mr. Graham asked the trial court to impose an exceptional sentence downward of 25 years' confinement. Mr. Graham argued an exceptional sentence was legally authorized by the "multiple offense policy" mitigating factor set forth in RCW 9.94A.535(1)(g). He argued the convictions arose from a single incident and that "[g]iven the lack of incremental harm engendered by each additional shot, application of the multiple offense policy on the specific facts of this case results in a sentence which is clearly excessive in light of the stated purposes of the SRA [Sentencing Reform Act of 1981, ch. 9.94A RCW]." Clerk's Papers (CP) at 89. Mr. Graham presented evidence demonstrating his rehabilitation during his over 10 years of incarceration.

The trial court was "very impressed" with Mr. Graham's rehabilitation, and stated, "[T]here's really no doubt in my mind that you've become a changed person since you've been in prison." Report of Proceedings (RP) at 24-25. Nevertheless, the court concluded that it did not have a legal basis to impose a mitigated exceptional sentence, stating:

> Your lawyer has argued one, basically one [mitigating factor] to me, and that is the application of the multiple offense policy. I spent some time with this . . . . [RCW] 9.94A.589(1)(a) talks about when you're scoring an offense and you have other current offenses, if there are too many other current offenses, it might be appropriate to impose an exceptional sentence. But if you look at Subpart B, the multiple offense policy doesn't really apply to Subpart B,

4

because with serious violents you aren't scoring, you aren't
taking into consideration the other current offenses.

RP at 26-27. The court went on to state, "[I]t's the very rare occasion when you should

be utilizing the multiple offense policy to reduce a sentence. There is a discussion

within these opinions regarding an analysis of whether they are—the additional current

charges are nonexistent, trivial, or trifling." RP at 29. The court further stated,

"Certainly in a situation where we have someone firing a weapon at an officer, firing on

another officer who's driving a motor vehicle, firing on a patrol vehicle containing three

other officers, I hate to even use the words 'nonexistent, trivial, or trifling.'" RP at 29.

The court then imposed a 985.5 month standard-range sentence (240 months

less than the previous sentence). RP at 29. The reduced sentence reflected the court's

imposition of six 24-month deadly weapon enhancements (down from six 60-month

enhancements) and one 12-month deadly weapon enhancement (down from one 36-

month enhancement).[1] CP at 172. The court ordered all sentences to be served

consecutively. The court stated, "I don't agree with this sentence . . . . But without

some other mitigating circumstance, my hands are tied." RP at 29. Mr. Graham

appealed.

## ANALYSIS

The issue is whether the trial court erred in rejecting Mr. Graham's mitigated

exceptional sentencing request based on the multiple offense policy and imposing a

---

[1] The State erroneously asserts in its brief (Resp't's Br. at 4) that the sentencing
court reduced the sentence beyond the enhancement corrections. Based on this

5

standard-range sentence under RCW 9.94A.589(1)(b). Mr. Graham contends the trial court improperly failed to consider the application of the multiple offense policy.

Initially, the State contends Mr. Graham's issues are not appealable because the trial court was limited to resentencing consistent with *Williams-Walker.* Any issue outside the enhancement issue, the State argues, is not properly before this court.

In *State v. Toney,* 149 Wn. App. 787, 205 P.3d 944 (2009), Division Two of this court addressed whether a defendant may raise and argue issues in a second appeal despite failing to raise those issues in the first appeal. Mr. Toney originally argued former RCW 9.94A.310 (1996) did not mandate firearm enhancements to run consecutively. The *Toney* court agreed and "remanded for resentencing under 'proceedings consistent with this opinion.'" *Toney,* 149 Wn. App. at 790. The trial court sentenced Mr. Toney, per the appellate court's direction, but conducted a new sentencing hearing prior to imposing the sentence. Mr. Toney again appealed, this time challenging community placement and raising double jeopardy concerns. The State responded that these issues could not be raised for the first time on a second appeal. The *Toney* court held a defendant "may raise sentencing issues on a second appeal if, on the first appeal, the appellate court vacates the original sentence or remands for an entirely new sentencing proceeding, but not when the appellate court remands for the trial court to enter only a ministerial correction of the original sentence." *Toney,* 149 Wn. App. at 792.

---

incorrect assertion, the State requests affirmative relief. Even if the State were correct, RAP 5.1(d) requires the filing of a notice of cross review to request affirmative relief.

Here, this court remanded "for resentencing consistent with the decision in *Williams-Walker.*" *Graham* III, 2011 WL 3570120 at *3. This language is distinct from *Toney* because this court specifically limited the resentencing to one case, but like the court in *Toney*, the court conducted a new sentencing hearing. While the court resentenced Mr. Graham to reflect the enhancement corrections, it considered Mr. Grahams argument for a mitigated sentence and decided against it. When a court exercises "independent judgment" and rules again, then that issue becomes an "appealable question." *State v. Barberio*, 121 Wn.2d 48, 50, 846 P.2d 519 (1993).

Turning to whether Mr. Graham may appeal his standard-range sentence, the law is well settled that generally a defendant cannot appeal a standard-range sentence. *See* RCW 9.94A.585(1); *State v. Williams*, 149 Wn.2d 143, 146, 65 P.3d 1214 (2003). Nevertheless, a criminal defendant "may appeal a standard range sentence if the sentencing court failed to comply with procedural requirements of the SRA or constitutional requirements." *State v. Osman*, 157 Wn.2d 474, 481-82, 139 P.3d 334 (2006). "[W]here a defendant has requested an exceptional sentence below the standard range[,] review is limited to circumstances where the court has refused to exercise discretion at all or has relied on an impermissible basis for refusing to impose an exceptional sentence below the standard range." *State v. Garcia-Martinez*, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997). "A court refuses to exercise its discretion if it refuses categorically to impose an exceptional sentence below the standard range under any circumstances; i.e., it takes the position that it will never impose a sentence

7

below the standard range." *Id.* at 330. A court relies on an impermissible basis for declining to impose an exceptional sentence below the standard range if, for example, it takes the position that no drug dealer should get an exceptional sentence down or it refuses to consider the request because of the defendant's race, sex, or religion. *Id.*

In *State v. Cole*, 117 Wn. App. 870, 880, 73 P.3d 411 (2003), the defendant unsuccessfully requested a below-range sentence and then challenged the court's refusal to impose an exceptional sentence on appeal. The court held the defendant could not appeal from a standard-range sentence where the trial court considered the defendant's request for the application of a mitigating factor, heard extensive argument on the subject, and then exercised its discretion by denying the request. *Id.* at 881. Similarly, in *Garcia-Martinez*, involving an equal protection challenge to a standard-range sentence, the court held a trial court that has considered the facts and concluded no basis exists for an exceptional sentence has exercised its discretion and the defendant may not appeal that ruling. 88 Wn. App. at 330.

Here, the trial court found no legal support existed for a mitigated sentence based on the multiple offense policy "because with serious violents you aren't scoring, you aren't taking into consideration the other current offenses." RP at 27.

RCW 9.94A.535(1)(g) provides a nonexclusive list of mitigating factors for awarding exceptional sentences, one of which is a finding that "[t]he operation of the multiple offense policy of RCW 9.94A.589 results in a presumptive sentence that is clearly excessive in light of the purpose of this chapter, as expressed in RCW

8

9.94A.010." RCW 9.94A.535(1)(g). RCW 9.94A.589 specifies the rules for sentencing defendants with multiple convictions. Generally, sentences for multiple offenses set at one sentencing hearing are served concurrently. But, where two or more serious violent offenses are presented, the multiple offense policy provides the defendant's offender score for the crime with the highest seriousness level shall be computed using other current convictions that are not serious violent offenses, and the sentence range for other serious violent offenses shall be determined by using an offender score of zero. RCW 9.94A.589(1)(b). The sentences are then imposed consecutively. *Id.*

Mr. Graham argues if the resulting sentence under RCW 9.94A.589(1)(b) is clearly excessive, then the court may impose a mitigated exceptional sentence under RCW 9.94A.535(1)(g). We have found no published Washington cases applying the mitigating factor of RCW 9.94A.535(1)(g) to serious violent offenses. Professor David Boerner sheds some light on why, "In particular, the addition by the Legislature of special provisions governing multiple 'serious violent' crimes is clear evidence of its belief that just punishment for such offenders required significant terms of confinement." David Boerner, *Sentencing in Washington*, 9-32 (1985).

The "multiple offense policy" refers to the trade-off recognized by the legislature in the first subsection of RCW 9.94A.589(1). *State v. Batista*, 116 Wn.2d 777, 786-87, 808 P.2d 1141 (1991). When dealing with most cases involving multiple crimes, the offenses are counted as if they were prior criminal history when calculating the offender

9

score for each offense. Sentences computed in such a manner are then served concurrently unless a basis for an exceptional sentence exists. RCW 9.94A.589(1)(a).

However, the trade-off in RCW 9.94A.589(1)(a) is nonexistent when sentencing serious violent offenses under RCW 9.94A.589(1)(b). Instead, multiple serious violent offenses do not count in the offender score for any other serious violent offenses. The most serious crime is sentenced considering the defendant's whole criminal history, excluding other current serious violent offenses and a standard range computed in the normal manner. For all other serious violent offenses, the crimes are scored with an offender score of zero and are directed to run consecutively to the most serious offense.

As clarified in *Batista,* "It is important to remember what is meant by the 'multiple offense policy' . . . . The statute sets out a precise, detailed scheme to follow where multiple offenses are involved. Where multiple current offenses are concerned, *except in specified instances involving multiple violent felonies,* presumptive sentences for multiple current offenses consist of concurrent sentences, each computed with the others treated as criminal history utilized in calculating the offender score." 116 Wn.2d at 786 (emphasis added). In other words, the multiple offense policy refers to sentencing proceedings under RCW 9.94A.589(1)(a); it does not apply to sentencing under subsection (1)(b) that involves multiple violent felonies. As Mr. Graham correctly points out, it is possible for a mitigated exceptional sentence involving concurrent terms under RCW 9.94A.589(1)(b). *See In re Pers. Restraint of Mulholland,* 161 Wn.2d 322, 166 P.3d 677 (2007) (holding a trial court's discretion to impose an exceptional

10

sentence includes discretion to impose concurrent sentences where consecutive sentences are presumptively called for). But, the multiple offense policy of subsection (1)(a) is not itself a basis for an exceptional sentence under subsection (1)(b) of RCW 9.94A.589. The trial court properly concluded likewise.

Moreover, even if the RCW 9.94A.589(1)(a) multiple offense policy did apply, the court considered this basis for a mitigated sentence and rejected it. Again, if a trial court considers the facts and rejects that basis for an exceptional sentence, then a defendant may not appeal that ruling. *Garcia-Martinez*, 88 Wn. App. at 330. Here, the trial court similarly considered the basis for a mitigated sentence suggested by Mr. Graham and rejected it. The court determined, "[I]t's the very rare occasion when you should be utilizing the multiple offense policy" and that there is "an analysis of whether they are—the additional current charges are nonexistent, trivial, or trifling." RP at 29. The court reasoned, "Certainly in a situation where we have someone firing a weapon at an officer, firing on another officer who's driving a motor vehicle, firing on a patrol vehicle containing three other officers, I hate to even use the words 'nonexistent, trivial, or trifling.'" RP at 29. Thus, the trial court considered the factual circumstances and determined the case was not one warranting a lowered sentence. Therefore, the court exercised its discretion and decided a standard-range sentence was appropriate. Accordingly, Mr. Graham cannot prevail on this challenge to his standard-range sentence.

11

In sum, the court did not wrongly refuse to exercise discretion; nor did the court rely on an impermissible basis in denying Mr. Graham's request.

Affirmed.

Brown, J.

WE CONCUR:

Kulik, J.

Fearing, J.